IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville November 27, 2007

**JOHN GRIDER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Wayne County**
**No. 13089     Robert L. Holloway, Judge**

————————————

**No. M2006-00473-CCA-R3-PC - Filed April 10, 2008**

————————————

In August 2004, the petitioner, John Grider, entered a "best interest" guilty plea pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25, 91 S. Ct. 160 (1970), to one count of second degree murder, a Class A felony.  The trial court sentenced the petitioner to twenty years in the Department of Correction.  In June 2005, the petitioner filed a petition for post-conviction relief.  Following a January 2006 hearing, the post-conviction court denied the petition.  The petitioner appeals, alleging that he received the ineffective assistance of counsel in that counsel failed to adequately communicate with him during the time leading to his plea and failed to file a motion to suppress his statements to police.  After reviewing the record, we conclude that petitioner did not receive ineffective assistance of counsel and therefore affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ. joined.

M. Wallace Coleman, Lawrenceburg, Tennessee, for the appellant, John Grider.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; T. Michel Bottoms, District Attorney General; J. Douglas Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Plea Hearing*

At the August 6, 2004, hearing where he entered his <u>Alford</u> plea, the petitioner testified that he was a thirty-eight-year-old high school graduate and had worked as a rancher and a truck driver. The petitioner testified that he had suffered from bipolar disorder for the previous six to eight years,

but both parties agreed that he had been declared competent to stand trial and that an insanity defense would be inapplicable in this case. The petitioner stated that he was on medication that alleviated the symptoms of his mental illness.

The state informed the court that the proof would show that the victim, David Eddy, was shot in the bedroom of his parents' home by a gunman who stood on the house's porch and shot through the window with a shotgun, killing the victim. The state noted that the petitioner had given a statement in which he implicated another person, but the police investigation revealed that the petitioner's statement was untrue. The trial court then explained to the petitioner the full range of rights available to him and the implications of entering an Alford plea. The petitioner acknowledged that he understood the meaning of his plea and that there was a factual basis for the court to accept a plea to second degree murder. The petitioner said that he had not been coerced into entering a plea, that the plea was in his best interest, and that his attorneys had worked with him throughout the nineteen months he had been in custody. The petitioner stated that he was "very satisfied" with his attorneys' performance in representing him.

*Post-Conviction Evidentiary Hearing*

In his post-conviction petition, the petitioner alleged four grounds for relief: that his plea was entered involuntarily and unknowingly, that the plea was based on the use of evidence obtained pursuant to an unlawful arrest, that the plea was based on a violation of the petitioner's privilege against self-incrimination, and that the petitioner received the ineffective assistance of counsel. However, because the petitioner limits his appeal to the ineffective assistance of counsel issue, our review of the evidentiary hearing, which was held on January 19, 2006, will be limited to the testimony addressing this issue.

The petitioner testified that he was in custody on an unrelated charge when he made a statement to police in connection with this case. The petitioner asserted that the entire statement was a lie. He stated that Steve Wilson, the police investigator to whom he gave his statement, told him that he had "blood on [his] hands." The petitioner acknowledged that he did sign a Miranda waiver before giving his statement, and that while he was not "coerced" into giving his statement, he did feel "pressured" by the police investigator based on certain statements the investigator made.

The petitioner testified that in his statement to police, he implicated a man, Tim Morten, who had no connection with the offense. The petitioner said that he implicated Morten because Morten had accused him of stealing a truck. The petitioner testified that his ex-wife also gave a statement to police, one that implicated him in the murder and which led police to focus their investigation on him. The petitioner asserted that this statement was untrue, and that his ex-wife made the statement because she had been romantically involved with both the victim and Tim Morten and was therefore angry at him (the petitioner) when she made her statement. The petitioner said that the fact that he and his ex-wife reconciled shortly after the murder was evidence that her statement was untrue. The

petitioner testified that his attorneys[1] did not file a motion to suppress his statements to police, and the petitioner also said that his attorneys never discussed this possibility with him. The petitioner said that he was upset over counsel's failure to file a motion to suppress the statement to police because the statement was the only evidence the state had implicating him in the murder.

The petitioner testified that he did not remember the date on which he first met with his trial attorneys, who were with the public defender's office, but he said that his attorneys met with him at the Wayne County Jail a total of three times during the sixteen months he was in custody there. He testified that the longest meeting with his attorneys lasted no more than forty-five minutes. He stated that he did meet with his attorneys during several "Plea Days" in which defendants with pending criminal cases would have the status of their cases reviewed, but that his meetings with counsel on these days would be brief because counsel had to meet with other clients on those dates as well.

During his testimony at the evidentiary hearing, the petitioner identified several other problems with his counsel. He testified that he identified several potential witnesses for his attorneys to interview, but that these persons were not interviewed. He also stated that his attorneys did not present him with a plea offer until three or four days before trial, and that his attorneys did not explain to him the possibility of being convicted of a lesser offense at trial. He also claimed that counsel did not explain the full ramifications of his Alford plea to him. The petitioner admitted that he did not express any problems with his attorneys at the plea hearing, and he also admitted that he understood the ramifications of his plea at the time it was entered. However, the petitioner said that "I didn't know then what I know now" about his attorneys.

On cross-examination, the petitioner admitted that he was aware at the time of his plea that regardless of the name of his plea, he would be receiving a twenty-year sentence. The petitioner admitted that he informed his attorneys that his ex-wife's statement was a lie, but that the only thing he could have done about that statement was cross-examine his ex-wife at trial. The petitioner again admitted that he had signed a Miranda waiver prior to giving his statement and that he was not coerced into giving the statement. The petitioner testified that he took the plea because his attorneys informed him that it was a good deal and that he was tired of living in unsanitary conditions in the Wayne County Jail. On redirect, the petitioner testified that the jail was overcrowded, had leaky plumbing, and had black mold on the walls and rust on the bars to each cell. He noted that the state health department shut down the jail shortly after he began his sentence in the state penitentiary.

Investigator Steve Wilson with the Wayne County Sheriff's Department testified that he interviewed the petitioner while he was in custody on an unrelated charge. Investigator Wilson said that the petitioner had not been charged with the murder at the time of the statement, and that the petitioner signed a Miranda waiver and did not request an attorney at the time. He noted that the petitioner gave two statements, one handwritten and one typed, on two different days. Investigator

---

[1]The petitioner was represented by two attorneys prior to entry of his plea. Only the lead counsel testified at the evidentiary hearing.

Wilson said that he advised the petitioner of his rights before each statement, and that he carefully reviewed each statement with the petitioner to ensure that the statement was accurate. He noted that while some parts of the petitioner's statement ultimately proved to be untrue, the petitioner's statements did contain some details that only the killer could have known about. Investigator Wilson denied telling the petitioner that he had blood on his hands before the statements were made.

The petitioner's lead trial counsel testified that as of the evidentiary hearing, he had seventeen years' experience as an attorney, most of which were spent working for public defender's offices in two Tennessee judicial districts. He recalled that he met with the petitioner on several occasions, including six to eight meetings at the county jail and several meetings at Plea Days. Counsel testified that the petitioner never raised any concerns regarding his statements to police. Counsel said that while he had no specific recollection of reviewing the petitioner's statement with him, counsel said that in each of his cases where a defendant had given a statement to police, he reviewed the statement with the defendant to determine whether it had been given voluntarily and without coercion. Counsel said that after reviewing each defendant's statement, if it appeared evident that there were no problems with the statement and the circumstances under which it was given, he would not file a motion to suppress.

Counsel said that he and co-counsel attempted to interview each potential witness identified by the petitioner, and that he was successful in interviewing most of the persons the petitioner identified. Counsel recalled that the petitioner's ex-wife would not talk to him or co-counsel, and that the other potential witnesses counsel interviewed, particularly the ex-wife's parents, did not provide any information that would be beneficial to the petitioner's case. Counsel testified that he and co-counsel communicated this information regarding the lack of helpful witnesses to the petitioner. Counsel recalled that after the petitioner's brother raised the issue of the petitioner's mental health, counsel had the petitioner evaluated for his competency to stand trial; the petitioner was deemed competent to stand trial and an insanity defense would not apply to the petitioner's case.

Counsel noted that the state initially offered a plea deal of twenty-two or twenty-three years, but that the two sides negotiated a sentence of twenty years and settled the case a day or two before trial. He said that it was his office's standard procedure to go over possible sentences if a case went to trial, including sentences for lesser offenses. Counsel testified that he told the petitioner that it would be likely that he would be convicted if the case went to trial, but that the petitioner made the final decision to enter a plea.

On January 25, 2006, the post-conviction court entered an order denying the petition for post-conviction relief. This appeal follows.

## STANDARD OF REVIEW: POST-CONVICTION PROCEEDINGS

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record

-4-

preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, the petitioner's claims are reviewed under a de novo standard with no presumption of correctness. Id. at 457.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right of counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The petitioner must satisfy both prongs of the Strickland test to prevail on a claim of ineffective assistance of counsel. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires the petitioner to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201.

In this case, our review of the record reveals that the post-conviction court properly denied the petitioner relief. Regarding the petitioner's assertion that trial counsel was deficient for failing to file a motion to suppress his statement to police, it is unclear from the record that the petitioner ever informed his attorneys that he desired to have his statement to police suppressed. Counsel

testified that it was his standard practice to review a defendant's statement to police for possible constitutional violations that would warrant a motion to suppress, and that no such problems existed in the statement the petitioner gave in connection with this case. The petitioner argues that trial counsel should have filed a motion to suppress based on his "mental health shortcomings," noting that he previously had been a patient in a mental hospital, and based on "the coercive nature of the poor conditions of the jail where the [petitioner]" was housed. However, we find these arguments unpersuasive. The petitioner's assertions regarding his mental capacity were rebutted by several factors, including an evaluation that determined that the petitioner was competent to stand trial, the clarity of his responses to the trial court's questions during the plea hearing, and the specificity of his statement to police. Regarding the living conditions at the Wayne County Jail, where the petitioner was housed prior to his plea, the petitioner has made general accusations about the unsanitary conditions at the jail and noted that the jail was ordered closed shortly after he left the jail, but the petitioner has made no specific assertions about how the jail's living conditions affected his health or his ability to make knowing and voluntary statements to police.

We also find the petitioner's assertions regarding his lack of interaction with his attorneys unpersuasive. The petitioner claimed that he met with his attorneys only three times while he was in the Wayne County Jail, in addition to a few other brief meetings at the courthouse. However, counsel testified that he met with the petitioner six to eight times at the county jail. Counsel also testified that he and co-counsel interviewed most of the potential witnesses that the petitioner identified and that counsel communicated the results of these meetings, as well as other information that resulted from counsel's investigation of the case, to the petitioner. Regarding potential defense witnesses who were not interviewed, the petitioner did not present the testimony of any potential witnesses regarding what they would have said had they been interviewed or called to testify at trial. In light of this evidence, we conclude that the petitioner's claim of ineffective assistance of counsel based on failure to communicate and failure to file a motion to suppress is without merit.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE